IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| TERESA R. HINKLE, | ) | CASE NO.5:20-CV-00062-PAG |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | United States District Judge |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | CARMEN E. HENDERSON |
| SECURITY, | ) | |
| | ) | REPORT & RECOMMENDATION |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Teresa R. Hinkle ("Hinkle" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On December 8, 2016, Claimant filed an application for DIB, alleging a disability onset date of August 25, 2013, and claiming she was disabled due to fibromyalgia, irritable bowel syndrome, Meniere's disease, mitro valve prolapse, chronic fatigue, arthritis, liver disease, Raynaud's syndrome, spinal stenosis – cervical, status post spinal fusion at C5-C6 and C6-C7. (ECF No. 13 at 323). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 13 at 386). On September 25, 2018, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified.  (ECF No. 13 at 217-254).  On December 6, 2018, the ALJ

issued a written decision finding Claimant was not disabled.  (ECF No. 13 at 197).  The ALJ's decision became final on November 27, 2019, when the Appeals Council declined further review. (ECF No. 13 at 7).

On January 13, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case.  (ECF Nos. 15, 17, 18). Claimant asserts the following assignments of error:

(1) The ALJ erroneously failed to properly evaluate the evidence and the testimony in this matter relating to Hinkle's multiple impairments and symptoms.

(2) The ALJ erred as she did not meet her burden at Step Five of the Sequential Evaluation.

(ECF No. 15 at 1).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Plaintiff's hearing:

> [C]laimant testified that she has chronic and debilitating pain in her neck, back, and extremities.  She explained that she has pain in her neck on a daily basis, with varied severity, that radiates into both arms.  She also experiences numbness and tingling in her arms. In terms of her back pain, she experiences daily pain.  She also occasionally experiences shooting pain in her back that is so severe that she is unable to move.  When she experiences this type of severe pain, she usually must go to the emergency department.  In addition, the daily pain radiates to her lower extremities and she experiences numbness and tingling in her feet.
>
> In terms of the claimant's fibromyalgia and Meniere's disease, the claimant testified that she experiences ringing in her ears, dizziness, and diarrhea.  She also testified that she has difficulty with balance, concentration, focus, and word recall.  Finally, she alleged shortness of breath and difficulty breathing - but was not sure what impairment was to blame for this.
>
> In terms of activities of daily living, the claimant testified that she does very little around the house. She lives with her husband and two sons.  She testified that her husband does most of the housework

> and all of the cooking. She said that she cannot reach above her shoulder to put dishes away or bend over to load the dishwasher, sweep, and mop. Her social interaction is very limited because her daily pain rarely allows her to leave the house.

(ECF No. 13 at 204-205).

During the hearing, the ALJ posed a series of hypothetical situations to the vocational expert. For the first hypothetical, the ALJ proposed that:

> the individual could occasionally lift/carry, push/pull 20 pounds, frequently 10 pounds. The individual can stand/walk six hours in an eight-hour workday. Occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl. Never climb ladders, ropes, and scaffolds. Limited to simple, routine. Overhead reaching bilaterally limited to occasional. Frequent handling bilaterally. Occasional fingering with the left hand, frequently with the right hand. The individual should avoid concentrated exposure to extreme cold and noise, all exposure to hazards, unprotected heights, dangerous machinery. I have no visual or communicative limitations, but [I] do have the following. Occasional interaction with coworkers and the public. No tasks involving supervising, planning or directing the activities of others. No tasks involving high production quotas or fast paced production requirements found in assembly line work. The individual could perform goal-oriented work such as office cleaning. There should be only occasional workplace changes, with any changes explained in advance.

(ECF No. 13 at 249-250). Subsequently, the ALJ posed additional hypotheticals, each with greater limitations than the first and each of which the vocational expert testified that there would not be significant jobs in the economy for a person with the additional limitations.[1]

Ultimately, the ALJ found that the first hypothetical accurately accounted for Claimant's limitations and summarized the vocational expert's testimony as follows:

> To determine the extent to which [Claimant's] limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert

---

[1] These subsequent hypotheticals are detailed later in this Report & Recommendation.

testified that given all of these factors the individual would be able to perform the requirements of representative occupations listed below:

| JOB TITLE | DOT CODE | DESCRIPTION | JOBS IN THE NATION |
|---|---|---|---|
| Office Cleaner | 323.687-014 | Light, SVP 2 | 20,000 |
| Bakery Worker | 524.687-022 | Light, SVP 2 | 27,000 |
| Food Service Worker | 311.6770-010 | Light[,] SVP 2 | 44,000 |

(ECF No. 13 at 208). The ALJ found the vocational expert's testimony credible "because it is based on his professional experience, because it is generally consistent with the DOT (see SSR 00-4p), because it is based on sources of data that [she] consider[s] to be reliable even if and when it is not consistent with the DOT, and because it is not contradicted." (ECF No. 13 at 208). Accordingly, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above-cited rule." (ECF No. 13 at 208).

**B. Relevant Medical Evidence**

The ALJ summarized Claimant's physical health records and symptoms as follows:

> Turning first to the claimant's physical impairments, despite her long list of complaints - involving all or nearly all of her body systems -the objective medical evidence is inconsistent with the alleged severity of her allegations.  In terms of diagnostic test results, x-rays of the cervical spine taken on February 14, 2013 showed [degenerative disc disease,] ["]DDD[",] at C5-6.  (Exhibit 8Fl) An MRI taken on February 25, 2013, revealed DDD at C5-6 and C6-7, with only minimal right neural foraminal narrowing at CS-6 without cord contact and a small midline disc at C3-4.  (Id. at 6-7)  The claimant's condition was slightly worse, demonstrated by MRI taken on April 20, 2016 and the claimant underwent a fusion at C5-6  on July 11, 2016.  (Id. at 36-46 and 99)

4

An EMG of the claimant's upper extremities, taken in mid 2016 was normal.  There was no evidence of cervical radiculopathy or carpal tunnel syndrome.  (Exhibit 23Fl)  X-rays of the claimant's lumbar spine taken on May 1, 2017 was normal aside from some facet arthropathy at L4-5 and L5-S1.  X-rays of the claimant's left hip were normal.  (Exhibit 29F38)  A follow-up EMG of the claimant's extremities, taken on March 6, 2018, was negative.   However, a skin biopsy of the lower extremities, performed on March 28, 2018, confirmed small fiber neuropathy.  (Exhibit 34Fl)  An MRI of the cervical spine, taken on January 31, 2017, showed a stable fusion and confirmed ongoing DDD  with a tiny disc herniation at C3-4 and no cord compression.  (Exhibit 24F2)  Finally, an MRI of  the lumbar spine, taken on August 6, 2018, revealed some degenerative changes at L4-5 with possible  nerve root contact.  (Exhibit 46F)

In terms of clinical observations, the claimant's treating physician Dr. Mark Pellegrino has consistently noted 18/18 positive tender points throughout the period of adjudication.  (Exhibits 2F, 20F, 29F, and 30F)  However, all other objective findings have been relatively normal.  More specifically, an examination administered several months after the claimant's fusion revealed a normal gait and good balance. (Exhibit 40F9-12)  An examination administered by Dr. Pellegrino on January 20, 2017 revealed some mildly decreased range of motion and mild tenderness in the cervical spine.  Neurologically the claimant was intact, aside from some limping  on the left.  (Exhibit 20Fl-6)  Similar findings were made by Dr. Pellegrino on February 28, 2017.   (Exhibit 23F)  Following the claimant's cervical fusion, and at several other points during the period of adjudication, the claimant participated in physical therapy.  (Exhibit 35F) This treatment, in conjunction with medication management, appears to have contributed to a decrease in the claimant's complaints to her treating physicians.

On December 14, 2017, the claimant was in no acute distress and she reported some improvement in her symptoms.  Range of motion testing was normal.  In addition, sensation and reflexes were intact.  (Exhibit 40Fl-8) On January 23, 2018, Dr. Pellegrino noted ongoing positive tender points  and tenderness in neck and lower back.  However, the claimant's gait was normal and range of motion in the cervical spine was within normal limits.  (Exhibit 29Fl-6)  In March 2018, the claimant's gait remained normal.  (Exhibit 30F)  She received a lidocaine injection for her fibromyalgia on May 21, 2018.  (Exhibit 34F9)  On June 11, 2018, the claimant reported to Dr. Pellegrino that her  medication continued to help relieve some of her pain.  She also reported an improvement in daily activities.   At this

> examination, Dr. Pellegrino noted a normal gait.  (Exhibit 34Fl-8)
> At appointments in June and August of 2018, Dr. Pellegrino noted
> positive trigger points.  However, he also noted a normal gait and
> normal strength, normal reflexes, and normal sensation in the
> extremities.  (Exhibit 41F)[.]

(ECF No. 13 at 205-206).

The ALJ also summarized Claimant's mental symptoms and treatment:

> Turning to the claimant's mental impairments, the claimant's lack
> of significant specialized mental health care and the relatively
> normal findings of Dr. Robert Dallara are inconsistent with a finding
> of disability.  The claimant was treated for depression and anxiety
> at New Beginnings Counseling Center from September 2014
> through August 2015.  A treatment noted dated January 12, 2015
> reports a depressed and anxious mood, a full affect, logical thought
> process, full orientation, and normal behavior. (Exhibit 3F)
> Treatment was discontinued in August 2015 prior to  the claimant
> undergoing surgery.  She has not re-established care with any mental
> health care provider.

(ECF No. 13 at 206).

Claimant takes issue with the length of the ALJ's factual summary, suggesting that the

ALJ's four pages of single-spaced summary was somehow insufficient compared to Claimant's

ten pages of double-spaced factual background. (ECF No. 13 at 18).  Claimant has not, however,

articulated how the ALJ's factual summary is deficient, much less how it gives rise to a reversible

error.[2]  The Court finds the ALJ's factual summary provides a sufficient background and will

---

[2] Although the ALJ must "consider" all the medical evidence under 20 C.F.R. §
404.1545(e), an exhaustive description of the evidence is not required in the decision. *Kornecky
v. Comm'r of Soc. Sec.*, 167 F. App'x. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the
evidence without directly addressing in [her] written decision every piece of evidence submitted
by a party.").

include additional facts if and as needed in the analysis.[3]

### C. Opinion Evidence

#### 1. Lindsay Cooley, LISW-S[4] - July 27, 2015

Social worker Lindsay Cooley treated Claimant at New Beginnings from September 10, 2014 until April 27, 2015. (ECF No. 13 at 627).  On July 27, 2015, Cooley opined that "at the time [she] treated the client[,] [Claimant] had difficulty sustaining work activity both in and out of the home due to pain from medical conditions. Additionally, her anxiety and depression affected her ability to concentrate, think clearly, associate with others, and maintain memory." (ECF No. 13 at 628).

The ALJ gave little weight to Cooley's opinion explaining that

> Despite her status as a treating source, I cannot give controlling weight or even great weight to these opinions for several reasons. First, Ms. Cooley is not an acceptable medical source.  Second, her opinion that the claimant had difficulty sustaining work activity is an issue reserved to the Commissioner of this agency. A finding that an individual is "disabled" or "unable to work," is an administrative finding and is an issue reserved to the Commissioner (20 CFR 404.1527(e)(l) and 416.927(e)(l)).  Medical opinions on these issues must not be disregarded; but cannot be entitled to controlling weight or even given special significance, even when offered by a treating source (SSR 96-Sp).  Furthermore, little weight is given to this part of the opinion because Ms. Cooley did not treat the claimant for pain, nor did she physically examine the claimant. Turning to her opinion that the claimant's anxiety and depression affect her ability to concentrate, thinking clearly, associate with others, and maintain memory, little weight is given to this opinion, as it is vague.

(ECF No. 13 at 206-207). Claimant does not take issue with the weight given to Cooley's opinion.

---

[3] The Court also notes that Claimant's brief included facts and evidence that were not before the ALJ, but, rather, brought into the record only following the ALJ's decision. (ECF No. 15 at 11). Thus, the ALJ could not have possibly included these facts in her summary.

[4] Licensed Independent Social Worker with Supervision Designation.

### 2. James Knight, chiropractor – April 10, 2017

Claimant treated with James Knight, D.C. from January 31, 2017 through March 22, 2017. On April 10, 2017, Knight opined that from April 10, 2017 through August 30, 2017, Claimant would be able to sit for 3 hours in an 8-hour workday, walk for 2 hours in an 8-hour workday, and stand for 2 hours in an 8-hour workday. (ECF No. 13 at 1462). He also opined that the claimant would be able occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. (ECF No. 13 at 1462). Knight opined that the claimant cannot operate foot controls or use her hands for pushing and pulling arm controls during that time. (ECF No. 13 at 1462).

The ALJ gave Knight's opinion little weight explaining that "[a]side from the lift/carry restrictions, Dr. Knight's limitations are inconsistent with the objective medical evidence discussed above. In addition, Dr. Knight is not an acceptable medical source. Finally, the limitations given were only temporary and do not apply to the entire period of adjudication." (ECF No. 13 at 207). Claimant does not take issue with the weight given to Knight's opinion.

### 3. Robert F. Dallara, Jr., Ph.D. – February 22, 2017

Claimant underwent a consultative examination with Dr. Robert F. Dallara, Jr. on February 22, 2017. (ECF No. 13 at 1429-1435). Following the examination, Dallara opined that Claimant may have some difficulties relating to others and withstanding stress and pressure associated with day-to-day work activity due to her current level of depression. (ECF No. 13 at 1433).

The ALJ explained that "[w]hile I agree that the claimant's mental impairments will cause some difficulty with work-related mental activities, as described in the RFC, I cannot give great weight to this opinion due to its vagueness." (ECF No. 13 at 207). Claimant does not take issue with the weight given to Dallara's opinion.

### 4. State Agency reviewing physicians

On February 26, 2017, State Agency reviewing physician Anne Prosperi completed a

physical RFC assessment of Claimant. Prosperi determined that Claimant could occasionally lift and/or carry up to 20 pounds and frequently up to 10 pounds; stand and/or walk about six hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was otherwise unlimited in her abilities to push and or pull.  (ECF NO. 13 at 336-337). Prosperi explained that these limitations were due to Claimant's fibromyalgia, C-spine DDD, Fatigue, and obesity. (ECF No. 13 at 337). Prosperi also stated that Claimant has normal range of motion and gait and maintains good strength. (ECF No. 13 at 337). Prosperi opined that Claimant could occasionally climb ramps/stairs, balance, stoop, kneel, and crouch but never climb ladders. (ECF No. 13 at 337). Prosperi opined that Claimant is limited in both left and right overhead reaching, handling, and fingering, but has unlimited feeling. (ECF No. 13 at 337-338).

Upon reconsideration, Dr. Michael Delphia's opinion, dated May 1, 2017, essentially and substantively echoed that of Prosperi. (ECF No. 13 at 358-361).

On March 2, 2017, State Agency reviewing psychologist Tonnie Hoyle completed a mental RFC assessment of Claimant. Hoyle opined that Claimant was moderately limited in her ability to maintain attention and concentration for extended periods and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms but was otherwise not significantly limited in the area of sustained concentration and persistence. (ECF No. 13 at 340).  Hoyle explained that Claimant is capable of sustaining an ordinary routine but would need occasional prompting in order to remain on task. (ECF No. 13 at 340). With respect to Claimant's social interaction limitations, Hoyle opined that Claimant is moderately limited in her ability to interact appropriately with the general public and her ability to accept instructions and respond appropriately to criticism from supervisors but is otherwise not significantly limited in this area. (ECF No. 13 at 340). Hoyle further explained that Claimant is "[c]apable of occasional

9

and superficial interactions with others, including the general public, fellow workers, and supervisors" but that she should "not supervise, plan, or direct activities of other." (ECF No. 13 at 341. In the area of Claimant's adaptation limitations, Hoyle opined that Claimant is moderately limited in the ability to respond appropriately to changes in the work setting but is otherwise not significantly limited. Hoyle further stated that claimant is "[c]apable of performing work in a fairly static setting. Any changes in routine should be explain[ed] in advance. Should not have strict time or production demands, as this stress would exacerbate symptoms." (ECF No. 13 at 341).

Upon reconsideration, Dr. Joseph Edward's opinion, dated April 12, 2017, essentially and substantively echoed that of Hoyle. (ECF No. 13 at 361-363).

Without detailing or even summarizing the State Agency reviewing physician's opinions, the ALJ gave great weight to their assessments explaining that their opinions "are consistent with the objective medical evidence." (ECF No. 13 at 206).

Claimant objects to the weight given to the opinions of State Agency reviewing physicians Prosperi and Delphia, each of whom opined as to Claimant's physical RFC. (ECF No. 15 at 23).

## V.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3.    The claimant has the following severe impairments: [DDD] - cervical status post fusion and discectomy, herniated disc with stenosis - cervical spine, spondylosis -- lumbar spine, sacroiliitis, osteoarthritis - multiple sites, obesity, Meniere's disease, Raynaud's syndrome, de Quarvain's, fibromyalgia, small fiber neuropathy, major depressive   disorder, and anxiety disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: The claimant can only

occasionally climb ramps and stairs. She can only occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. She can only occasionally reach overhead bilaterally. She can frequently handle bilaterally. She can only occasionally finger with the left hand and frequently finger with the right hand. She must avoid concentrated exposure to extreme cold and noise. She must avoid all exposure to hazards - such as unprotected heights and dangerous machinery. The claimant can have only occasional interaction with coworkers and the public. She cannot perform tasks that involve high production quotas or fast-paced production demands (e.g., assembly line work). The claimant can perform goal-oriented work (e.g., office cleaner). She can adapt to occasional changes in workplace tasks and/or duties, when such changes are explained in advance.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 25, 2013, through the date of this decision (20 CFR 404.1520(g)).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

(*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Claimant raises two issues on appeal. First, Claimant argues that substantial evidence does not support the ALJ's findings. Second, Claimant argues that the ALJ failed to meet her burden at Step Five.

1. **Substantial Evidence supports the ALJs findings**.

Within the first issue, Claimant argues that the ALJ: erroneously determined the severity of several of her impairments and that such error was not harmless (ECF No. 15 at 20); failed to consider Claimant's statement's in the Function Report (ECF No. 15 at 20); failed to consider Claimant's fibromyalgia in accordance with Social Security Ruling (SSR) 12-2p (ECF No. 15 at 20-21); erroneously concluded that Claimant had normal gait (ECF No. 15 at 21); failed to consider the "effect of the combination" of her impairments when the ALJ determined that Claimant did not meet or equal a Listing (ECF No. 15 at 21-22); erred by giving great weight to the State Agency reviewing physicians (ECF No. 15 at 22-23); and failed to provide clear reasoning for discounting and rejecting Claimant's testimony and subjective complaints and failing to comply  with the requirements of SSR 16-3p (ECF No. 15 at 23).

As an initial matter, many of Claimant's arguments are generalized and include only limited, if any, record citations and developed argument. (ECF No. 15 at 18-24). When a party fails to cite to specifics in the record, the court is under no obligation "to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*; 447 F .3d 477, 491 (6th Cir. 2006); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Claimant argues that the ALJ failed to consider the effect of the combination of her impairments in connection with the Listings. (ECF No. 15 at 22). Claimant does not identify any

specific Listing that she believes her impairments in combination satisfied.[5] (ECF No. 15). Nor does Claimant cite to any record evidence supporting that she met or equaled a Listing.[6] In her reply brief, Claimant asserts for the first time that the ALJ erroneously failed to consider the Listing for inflammatory arthritis. (ECF No. 18 at 2). Claimant failed, however, to provide any further argument as to how she meets this Listing or demonstrate how she raised this error in her initial brief. She has thus waived her argument about the Listings. *McPherson*, 125 F.3d at 995-96; *Swain v. Comm'r of Soc. Sec*., 379 F. App'x 512, 517-18 (6th Cir. 2010).

Claimant similarly failed to support her objection that the ALJ failed to provide clear reasoning for discounting and rejecting Claimant's testimony and subjective complaints. (*See* ECF No. 15 at 23). However, Claimant's objections regarding the ALJ failing to consider statements contained in her Function Report (ECF No. 15 at 20), her positive ANA test along with C-reactive protein (ECF No. 15 at 20), and her "positive biopsy demonstrating small fiber neuropathy" (ECF No. 15 at 20) appear to correlate with her contention that her subjective complaints were improperly discredited by the ALJ. Accordingly, for the benefit of the Claimant, the Court will consider these arguments together.

**A. Severity of impairments**

Claimant argues that the ALJ erred by failing to consider her "fatty liver, hypertension, hypothyroidism, globus sensation, intermittent bladder leakage associated with irritable bowel syndrome, hyperlipidemia, history of mitral valve prolapse, Barrett's esophagus, lateral

---

[5] The ALJ specifically references considering Listings: 1.02 - Major dysfunction of a joint(s) (due to any cause); 1.04 - Disorders of the spine; 2.07 - Disturbance of labyrinthine-vestibular function; and 5.06 - Inflammatory bowel disease (IBD). (ECF No. 13 at 203).

[6] "[A] claimant has the burden of demonstrating that her impairment meets or equals a listed impairment." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

epicondylitis – right elbow, status post knee surgery, plantar fasciitis, calcaneal spur, external hemorrhoids, and costochondritis" as severe impairments at step two and that such error was not harmless. (ECF No. 15 at 19-20 ("Failure to consider these numerous impairments as severe constituted harmful error in this matter.").

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* "The goal of the test is to 'screen out totally groundless claims.'" *Id.* (*quoting Farris v. Sec'y of Health & Human Servs*., 773 F.2d 85, 89 (6th Cir. 1985)).

The ALJ found that Claimant suffered numerous severe impairments: "[DDD] - cervical status post fusion and  discectomy, herniated disc with stenosis - cervical spine, spondylosis -- lumbar spine, sacroiliitis, osteoarthritis - multiple sites, obesity, Meniere's disease, Raynaud's syndrome, de Quarvain's, fibromyalgia, small fiber neuropathy, major depressive disorder, and anxiety disorder (20 CFR 404.1520(c))." (ECF No. 13 at 202). Therefore, Claimant "cleared step two of the analysis." *Anthony,* 266 F. App'x at 457. "This caused the ALJ to consider [Claimant's] severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of [Claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Id.* (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). The ALJ, therefore, did not commit reversible err. *Id.*

Claimant also objects to the ALJ's assessment that carpal tunnel syndrome, bilateral trigger finger, lupus, rheumatoid arthritis, and chronic fatigue syndrome were not medically determinable

impairments. (ECF No. 13 at 203; ECF No. 15 at 19-20). To be a medically determinable impairment, the "impairment[] must result from anatomical, physiological, or psychological abnormalities that can be *shown by medically acceptable clinical and laboratory diagnostic techniques.*" 20 C.F.R. § 404.1521(emphasis added). "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* The Commissioner will not use a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

Claimant's initial brief fails to cite to any evidence of "medically acceptable clinical and laboratory diagnostic techniques" demonstrating support for these impairments. (*See* ECF No. 15 at 19-20). In her reply brief, Claimant addresses this failure and explains that "Crystal Clinic Orthopaedic Center, Summit Hand Center assessed Plaintiff on September 20, 2018 with trigger finger of left thumb, trigger finger of right thumb, carpal tunnel syndrome right, carpal tunnel syndrome left, and small fiber neuropathy (Tr. 1931)" . . . and "[a]s for the rheumatoid arthritis" there are "numerous references in the record regarding a positive ANA test along with C-reactive protein. (Tr. 1224, 1228, 1265, 1282, 1288, 1299, 1303, 1419, 1421, 1467, 1700, 1702, 1892) and the biopsy (Tr. 1710)." (ECF No. 18 at 2). Claimant argues that the ALJ committed harmful and reversible error by failing to consider these tests. (ECF No. 18 at 2).[7]

The ALJ remarked that Claimant's carpal tunnel syndrome and trigger finger were not established through diagnostic testing. (ECF No. 13 at 203). Substantial evidence supports this statement. EMG (electromyography) findings showed no evidence of carpal tunnel syndrome

---

[7] Claimant does not indicate the existence of any clinical or laboratory results relating to her alleged lupus, rheumatoid arthritis, or chronic fatigue syndrome. Accordingly, she has waived any objection to the ALJ's finding that these conditions were not medically determinable impairments.

16

(ECF No. 13 at 883, 1362) and examinations did not show any triggering of her digits (ECF No. 13 at 599, 604, 1828). No doctor discussed medical findings that supported diagnoses of either carpal tunnel syndrome or trigger finger. The ALJ also addressed the Crystal Clinic records cited by Claimant when she remarked that Claimant had "very recently [ ] received several steroid injections for bilateral carpal tunnel and bilateral trigger finger." (ECF No. 13 at 203 (citing ECF No. 13 at 1937-1941)). The ALJ also remarked, however, that these two conditions "have not been established through diagnostic testing." (ECF No. 13 at 203). Accordingly, substantial evidence supports the ALJ's conclusion.

Claimant also references a "positive ANA test along with C-reactive protein" without indicating with what alleged impairment these diagnostic tests correlate. Even if the Court assumes that these diagnostic tests correlate with Claimant's alleged lupus, rheumatoid arthritis, or chronic fatigue syndrome, the existence of the tests alone does not provide a diagnosis nor is it sufficient to demonstrate the degree of symptoms caused by the diagnosis. *Lee v. Comm'r of Soc. Sec*., 529 F. App'x 706, 713 (6th Cir. 2013) ("[N]ot every diagnosable impairment is necessarily disabling") (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (even "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition")). The Commissioner correctly points out that "[a] positive ANA test can sometimes signify an autoimmune disorder, but it 'doesn't necessarily mean you have a disease. Some healthy people have antinuclear antibodies in their blood.'" (ECF No. 17 at 13, n.7 (citing MedlinePlus, US National Library of Medicine, ANA (Antinuclear Antibody) Test, https://medlineplus.gov/lab-tests/ana-antinuclear-antibody-test/ (last visited [January 16, 2021])). Additionally, a positive C-reactive protein test means that there is inflammation in the body, from a wide variety of conditions. MedlinePlus, US National Library of Medicine,  C-reactive  protein,  https://medlineplus.gov/lab-tests/c-reactive-protein-crp-test/  (last

visited January 16, 2021). "A CRP test doesn't explain the cause or location of the inflammation. [ ] A higher than normal CRP level does not necessarily mean you have a medical condition needing treatment. There are other factors that can raise your CRP levels. These include cigarette smoking, obesity, and lack of exercise." *Id.* Accordingly, the ALJ did not commit reversible error by failing to mention these tests when determining Claimant's medically determinable impairments.

### B.  State Agency consultants

To the extent Claimant did not waive this objection, it fails on the merits. Claimant asserts that the reviewing physicians' assessments were completed prior to the conclusion of the submission of medical evidence – "includ[ing] both cervical and lumbar spine surgeries", thus the ALJ erred by giving the opinions great weight. (ECF No. 15 at 23).

Prosperi reviewed Claimant's records and provided an assessment in February 2017. Delphia reviewed Claimant's records upon reconsideration and provided an assessment in May 2017. The record establishes that both Prosperi and Delphia considered Claimant's cervical fusion and discectomy surgery in 2016. (ECF No. 13 at 332, 338, 354, and 359). The State agency physicians did not consider Claimant's lumbar surgery, however, because it did not occur until September 11, 2018 – after each of the assessments.  The ALJ also did not note the 2018 lumbar surgery because Claimant failed to submit evidence documenting the surgery until after the ALJ issued her decision. (*See* ECF No. 13 at 256-282). Clearly, the ALJ cannot discuss something of which she was not made aware. Moreover, Claimant presented these (and additional) records to the Appeals Council (ECF No. 13 at 8), which found that there was not a "reasonable probability that [the evidence] would change the outcome of the case" and denied Claimant's request for review. (ECF No. 13 at 7). This Court will not consider records not presented to the ALJ. *Salyer*

18

*v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 597 (6th Cir. 2014) (A court "correctly limit[s] its review to the administrative record presented to the ALJ.") (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).[8]

The record shows that Claimant continued treatment for her alleged impairments after each of the State Agency physicians' assessments. This subsequent treatment was not considered by the State Agency physicians, yet the ALJ gave their opinions "great weight". Where an ALJ gives great weight to State Agency reviewing sources who did not have the opportunity to review the full record, "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3)).

Here, the ALJ's decision specifically discusses evidence provided subsequent to the State Agency assessments but prior to the date of the decision. For example, the ALJ noted that

> X-rays of the claimant's lumbar spine taken on May 1, 2017 was normal aside from some facet arthropathy at L4-5 and L5-Sl. X-rays of the claimant's left hip were normal. (Exhibit 29F38) A follow-up EMG of the claimant's extremities, taken on March 6, 2018, was negative. However, a skin biopsy of the lower extremities, performed on March 28, 2018, confirmed small fiber neuropathy. (Exhibit 34Fl) An MRI of the cervical spine, taken on January 31, 2017, showed a stable fusion and confirmed ongoing DDD with a tiny disc herniation at C3-4 and no cord compression. (Exhibit 24F2) Finally, an MRI of the lumbar spine, taken on August 6, 2018, revealed some degenerative changes at L4-5 with possible nerve root contact. (Exhibit 46F)

---

[8] Claimant has not requested remand under sentence six of 42 U.S.C. § 405(g).

(ECF No. 13 at 205). The ALJ also discussed subsequent treatment and observations by Pellegrino from December 2017 through August 2018. (ECF No. 13 at 2016). Accordingly, the ALJ acknowledged and appreciated that additional medical evidence existed that the State Agency reviewing physicians did not have the opportunity to review and considered this subsequent evidence in determining Claimant's RFC.

Finally, although the ALJ's explanation for the weight given to the State Agency reviewing physician's assessments was brief, the decision itself refers to findings while discussing the basis for Claimant's RFC. (ECF No. 13 at 205, 206 (referring in detail to the findings of both Prosperi and Delphia)). There is no requirement that the ALJ repeat her explanations when she has previously included them in her decision. *See Dobson v. Comm'r of Soc. Sec.*, No. 1:19 CV 1424, 2020 WL 5106787, at *9 (N.D. Ohio Aug. 31, 2020) (citing *Sprague v. Colvin*, 2015 WL 2066227, at *3 (S.D. Ohio) ("Where, as here, the ALJ thoroughly addressed such matters as the consultants' reports, the other medical evidence of record, and plaintiff's credibility earlier in his decision, the ALJ was not required to repeat his discussion of those matters again in his discussion of the weight to be assigned to the medical opinions.")).

### C. Fibromyalgia

Claimant argues that the ALJ failed to consider Claimant's fibromyalgia as evidenced by the ALJ's statement during the hearing that she did not "have enough to even have fibromyalgia as a medically-determinable impairment because of the ruling requirements." (ECF No. 15 at 21 (citing ECF No. 13 at 223)). As referenced above, however, the ALJ found that Claimant's fibromyalgia was a *severe* impairment. Thus, although the ALJ stated during the hearing that there possibly was not enough evidence to include fibromyalgia as even a medically-determinable impairment, upon review of the entire record, she ultimately concluded that Claimant's

fibromyalgia is not *only* a medically-determinable impairment, but a *severe* impairment. Accordingly, there is no error here.

Claimant also argues that the ALJ did not consider her fibromyalgia in accordance with Social Security Ruling ("SSR") 12-2p. SSR 12-2p establishes special rules for how ALJs evaluate whether fibromyalgia is a severe impairment at step two. SSR 12-2p, 2012 WL 3104869 at *3. The ruling also provides guidance about how to evaluate a claimant's fibromyalgia at later steps in the disability evaluation process. *Id.* at *4-6.

Because the ALJ clearly listed Claimant's fibromyalgia as a severe impairment at step two, there is no error with respect to the step two analysis. We are left with determining whether there is a reversible issue related to the ALJ's evaluation of Claimant's disability in the later steps of the process. Claimant does not provide a specific argument, however, about how the ALJ misapplied SSR 12-2p. At best, Claimant argues that she "routinely tested positive in eleven of the eighteen tender points" outlined in SSR 12-2p, but that the ALJ incorrectly stated that Claimant "had eighteen positive tender points." The ALJ's finding is supported by the record evidence. (E.g., Tr. 568, 574, 579, 584, 589, 594, 607, 616, 1329, 1335, 1345, 1350, 1363, 1372, 1377, 1391, 1397, 1402 ("pain in 18 of 18 areas")). Moreover, even if Claimant only had 11 instead of 18 tender points, the ALJ's reliance on 18 tender points did not harm Claimant as it assumed a greater degree of problems than actually existed.

In her reply brief, Claimant raises two additional arguments in support of this objection: first, that despite finding that Claimant's fibromyalgia is a severe impairment, the ALJ "failed to consider whether it equaled the listing for inflammatory arthritis as required"; and second, that the ALJ failed to "consider the widespread pain and other symptoms as stated in the Ruling." (ECF NO. 18 at 2-3). Claimant offers no further analysis, citations, or other support for these newly

raised arguments. Because Claimant failed to adequately raise these in her initial brief and further failed to address them in anything other than a perfunctory manner, the Court considers these arguments waived. *McPherson*, 125 F.3d at 995-96; *Swain*, 379 F. App'x at 517-18 (failure to raise a claim in the merits brief constitutes waiver); *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived.").

### D.  Gait

Claimant argues that the ALJ's finding that she had normal gait is contradicted by Dr. Pellegrino's findings of antalgic gait. (ECF No. 15 at 221 (citing ECF No. 13 at 563, 568, 573, 579, 1335, 1387, 1396, 1402, 1407, 1412, 1418, 1438, 1447, 1627, 1636, 1645, 1651, 1657, 1663, 1854)). However, the ALJ considered and discussed Pellegrino's records at length (ECF No. 13 at 205-206), including an examination where Pellegrino noted Claimant limping "on the left." (ECF No. 13 at 206). Additionally, the medical evidence supports the ALJ's description that Claimant had "normal gait." (ECF No. 13 at  584, 589, 594, 599, 605, 612, 622, 823, 841, 847, 940, 956, 1194, 1198, 1203, 1207, 1211, 1216, 1221, 1225, 1259, 1263, 1270, 1274, 1278, 1288, 1293, 1298, 1341, 1346, 1351, 1356, 1361, 1368, 1377, 1382, 1478, 1502, 1700, 1712, 1722, 1737, 1799, 1894, 1903). That Claimant can point to record evidence contrary to the ALJ's conclusion is inconsequential here. *See Greene ex rel. Greene v. Astrue*, No. 1:10-CV-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010) ("a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position. Rather, [claimant] must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion."). Substantial evidence may support Claimant's position, but the ALJ still enjoys a "zone of choice" within which to decide close calls. *Mullen*, 800 F.2d at 545. Accordingly, substantial evidence supports the ALJ's finding that Claimant had "normal gait".

### E. Subjective complaints

Claimant argues that "[t]he ALJ erred when she discounted and rejected [Claimant]'s subjective complaints without providing clear reasoning for her decision." (ECF No. 15 at 23). She argues that "the cumulative evidence in the record provided objective evidence and findings which supported [Claimant]'s testimony[]" thus, [t]he ALJ erred when she found that [Claimant]'s testimony was not supported by substantial evidence in the record. As such, the ALJ erroneously failed to comply with the requirements of SSR 16-3p." (ECF No. 15 at 23). As mentioned above, Claimant fails to support this statement with any further argument, explanation, or record citations. She completely fails to argue what subjective complaints the ALJ failed to consider.

Additionally, the record supports the ALJ's determination. The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. Beyond medical evidence, Social Security Ruling 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1046 (E.D. Wis. 2005). The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304*; see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a

reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), report and recommendation adopted by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ specifically mentioned and considered several of Claimant's subjective complaints. The ALJ summarized Claimant's hearing testimony in which she discussed her "chronic and debilitating pain in her neck, back, and extremities." (ECF No. 13 at 204). The ALJ also recognized Claimant's complaints of fibromyalgia and Meniere's disease including symptoms of ringing in her ears, dizziness, and diarrhea. (ECF No. 13 at 205). Additionally, the ALJ discussed Claimant's complaints of imbalance, concentration, focus, word recall, shortness of breath, difficulty breathing, inability to reach above her shoulders, daily pain, numbness and tingling in her feet, pain radiating down both arms, and numbness and tingling in both arms. (ECF No. 13 at 204-205). After listing Claimant's many complaints, the ALJ noted that "despite her long list of complaints - involving all or nearly all of her body systems - the objective medical evidence is inconsistent with the alleged severity of her allegations." (ECF No. 13 at 205). The ALJ then detailed numerous diagnostic tests and results and medical observations demonstrating that Claimant's "statement concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF No. 13 at 205). The record demonstrates that the ALJ considered Claimant's subjective complaints but found that they were not consistent with the objective medical evidence. Thus, the broad line of attack on the ALJ's decision cannot succeed.

Claimant states that the ALJ failed to consider the statements she made in her Function Report, the positive results of an ANA test along with C-reactive protein, and "a positive biopsy demonstrating small fiber neuropathy[.]" In her Function Report, Claimant stated that even when she worked part time, she had to call off or leave work on an almost weekly basis. (ECF No. 13 at 486). She also wrote that she was weak and struggled to walk or stand. (ECF No. 13 at 486). Claimant's husband wrote that Claimant's everyday life consisted of pain, fatigue, depression, and anxiety. (ECF No. 13 at 538). However, as discussed above, the ALJ reasonably found that Claimant's subjective complaints regarding the intensity, persistence and limiting effects of her symptoms – including her pain, fatigue, depression and anxiety – were not fully consistent with the medical and other evidence. (ECF No. 13 at 205-206). The ALJ not need specifically discuss every piece of evidence in the record to avoid remand. *Kornecky*, 167 F. App'x at 508.

With respect to the ALJ's failure to mention the positive results of an ANA test along with C-reactive protein, this Court has already opined that the ALJ did not commit reversible error by failing to mention these tests when determining Claimant's medically determinable impairments. The outcome is the same here. Because the severity of a symptom cannot be determined simply by test results, and because Claimant has failed to explain how these tests support the severity of her subjective complaints – or even with which symptoms these tests correlate, the Court finds no error in the ALJ's failure to mention these test results in determining the severity of Claimant's impairments.

Claimant also argues that the ALJ failed to consider a positive biopsy demonstrating small fiber neuropathy. However, the ALJ discussed this evidence. (ECF No. 13 at 205 ("a skin biopsy of the lower extremities, performed on March 28, 2018, confirmed small fiber neuropathy. (Exhibit 34Fl)").  Claimant fails to indicate how the ALJ erred. (*See* ECF No. 13 at 20 ("In her decision,

the ALJ discussed the fact that Hinkle had a long list of complaints but felt that the objective medical evidence was not consistent with her allegations (Tr. 199). This is incorrect as [ ] she had a positive biopsy demonstrating small fiber neuropathy (Tr. 1710).”). A diagnosis alone is insufficient to demonstrate the degree of symptoms flowing from that diagnosis. *Lee*, 529 F. App’x at 713. Accordingly, the Court finds no error here.

### 2. Step Five

At step five the Commissioner has the burden of proof to show “that there is work available in the economy that the claimant can perform.” *Her v. Comm’r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999). “The step five analysis is meant to determine, given the severity of the impairments *already proven*, whether there are jobs in the economy which a claimant can perform.” *Id*. (emphasis added). If a Claimant has not established limitations to be included in an RFC by step four, the burden does not shift to the Commissioner to prove an RFC – or its limitations – at step five. *Id*. at 392.

The Commissioner properly met his burden to determine that there is work available in the economy that the claimant can perform at step five. To meet this burden, the Commissioner must make a finding “supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.” *Varley v. Sec’y of Health and Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation marks and citation omitted). “This substantial evidence may be in the form of vocational expert testimony in response to a hypothetical question, but only if the question accurately portrays [the claimant’s] individual physical and mental impairments.” *Baker v. Barnhart*, 182 F. App’x 497, 500 (6th Cir. 2006) (citations and internal quotation marks omitted). The Commissioner met this burden through the testimony of the vocational expert, who testified that work exists in the national economy that accommodates Claimant’s RFC and

vocational factors. Therefore, the ALJ found that Claimant is not disabled.

For the first hypothetical, the ALJ proposed that:

> the individual could occasionally lift/carry, push/pull 20 pounds, frequently 10 pounds. The individual can stand/walk six hours in an eight-hour workday. Occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl. Never climb ladders, ropes, and scaffolds. Limited to simple, routine. Overhead reaching bilaterally limited to occasional. Frequent handling bilaterally. Occasional fingering with the left hand, frequently with the right hand. The individual should avoid concentrated exposure to extreme cold and noise, all exposure to hazards, unprotected heights, dangerous machinery. I have no visual or communicative limitations, but [I] do have the following. Occasional interaction with coworkers and the public. No tasks involving supervising, planning or directing the activities of others. No tasks involving high production quotas or fast paced production requirements found in assembly line work. The individual could perform goal-oriented work such as office cleaning. There should be only occasional workplace changes, with any changes explained in advance.

(ECF No. 13 at 249-250). The vocational expert testified that such an individual could perform jobs in the light exertion level such as that of a cleaner, bakery worker, or food service worker. (ECF No. 13 at 251).

For the second hypothetical individual, the ALJ reduced the exertion level to sedentary, with lift/carry and push/pull 20 pounds occasionally and 10 pounds frequently but stand/walk only two hours and sit four hours in an eight-hour workday. (ECF No. 13 at 251).  The vocational expert stated that no jobs would exist for such a person. (ECF No. 13 at 251-252).

The ALJ's third hypothetical question added that the person would be absent equal to or greater than two days per month. (ECF No. 13 at 252). The vocational expert testified that absenteeism at a rate of two or more days a month would be work preclusive. (ECF No. 13 at 252).

The ALJ's fourth hypothetical question added that the person would be off task twenty percent or more of the time in an eight-hour workday. (ECF No. 13 at 252). The vocational expert

stated that such limitation would also preclude all work. (ECF No. 13 at 252). The ALJ then asked whether any jobs existed for a person whose total sit, stand, walk time totaled less than eight hours in a workday. (ECF No. 13 at 253). The vocational expert responded that no jobs would be available for such a person. (ECF No. 13 at 253).

Claimant's attorney modified the ALJ's first hypothetical question from frequent to only occasional handling bilaterally. (ECF No. 13 at 253). The vocational expert testified that only one job would exist for an individual with those limitations. (ECF No. 13 at 253).

The first hypothetical posed by the ALJ properly included Claimant's limitations that the ALJ found were supported by the record. Although the ALJ raised with the vocational expert additional limitations pertaining to subsequent hypotheticals, the ALJ concluded that these limitations did not apply to Claimant, which was supported by substantial evidence and within her "zone of choice". The vocational expert testified that approximately 91,000 jobs nationwide exist for someone with Claimant's vocational profile, including the restrictions the ALJ found supported by the record as a whole. (ECF No. 11 at 88-89).

Accordingly, because the hypothetical question accurately portrayed Claimant's individual physical and mental impairments, substantial evidence supports the ALJ's finding that work is available in the economy that the claimant can perform. *Baker*, 182 F. App'x at 500.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

DATED: January 19, 2021

                            *Carmen E. Henderson*
                            Carmen E. Henderson
                            United States Magistrate Judge

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas* v. *Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).